# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# COLUMBUS DIVISION

| | |
|---|---|
| UNION HOME MORTGAGE CORP., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:23-cv-03474 |
| NICHOLAS CAPRETTA, | ) |
| and | ) Judge: |
| MORGAN RODERICK, | ) |
| and | ) |
| GO MORTGAGE, LLC, | ) |
| Defendants. | ) |

## VERIFIED COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND DAMAGES

Plaintiff Union Home Mortgage Corp. ("Union Home"), by counsel, for its Verified Complaint for Preliminary and Permanent Injunctive Relief, and Damages against Defendants Nicholas Capretta ("Capretta"), Morgan Roderick ("Roderick"), and Go Mortgage, LLC ("Go"), hereby alleges and states as follows:

### PARTIES

1. Union Home is in the business of providing homeowners and prospective home buyers with mortgage and refinance loan products.

2. Capretta was previously employed by Union Home as an Area Sales Manager at its office located in Columbus, Ohio.

3. Roderick was previously employed by Union Home as a Loan Officer at its office located in Columbus, Ohio.

4. Go is a Delaware limited liability company in the business of providing homeowners and prospective home buyers with mortgage and refinance loan products.

## JURISDICTION AND VENUE

5. Paragraphs 1-4 are incorporated herein by reference.

6. This is an action seeking injunctive relief and damages against Capretta, Roderick, and Go based on their violations of, or tortious interference with, employment agreements inuring to the benefit of Union Home, as well as statutory violations and violations of the common law.

7. Union Home is an Ohio corporation with its principal place of business in Strongsville, Cuyahoga County, Ohio.

8. Capretta is a resident and citizen of Ohio and, on information and belief, resides in Powell, Delaware County, Ohio.

9. Roderick is a resident and citizen of Ohio and, on information and belief, resides in Chillicothe, Ross, County, Ohio.

10. Go is a Delaware corporation with its principal place of business located at 4215 Worth Ave., Columbus, OH, with a statutory agent for service of process care of Corporation Service Company, 3366 Riverside Drive, Suite 103, Upper Arlington, OH 43221.

11. Jurisdiction is proper in federal court pursuant to 28 U.S.C. § 1331, as this is a civil action arising under the Constitution, laws, or treaties of the United States.

12. The Court has supplemental jurisdiction over Union Home's state law claims because they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy, and none of the exceptions to supplemental jurisdiction set forth in 28 U.S.C 1367(c) apply.

13. Capretta's agreement with Union Home (the "Capretta Employee Agreement") states that any claim for breach of restrictive covenants and/or the unauthorized use and/or disclosure of information "may only be instituted and prosecuted in the state or federal courts of Ohio and each party hereby waives the right to challenge jurisdiction or seek to change venue." A true and accurate copy of the Capretta Employee Agreement is attached hereto as <u>Exhibit A</u>.

14. Roderick's agreement with Union Home (the "Roderick Employee Agreement") states that any claim for breach of restrictive covenants and/or the unauthorized use and/or disclosure of information "may only be instituted and prosecuted in the state or federal courts of Ohio and each party hereby waives the right to change of venue." A true and accurate copy of the Roderick Employee Agreement is attached hereto as <u>Exhibit B</u>.

15. Moreover, venue as to all parties is proper in this Court because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Ohio.

16. Moreover, the choice of law provision in the Capretta Employee Agreement and the Roderick Employee Agreement identifies Ohio law as governing the contractual claims at issue in this matter.

## FACTUAL BACKGROUND

### Capretta Background and his Employment with and Contractual Obligations to Union Home

17. Paragraphs 1-16 are incorporated herein by reference.

18. On October 22, 2020, Capretta and Union Home entered into the Capretta Employee Agreement, pursuant to which Capretta would serve as an Area Sales Manager for Union Home at its Columbus, Ohio office. (Ex. A).

3

19. Prior to obtaining employment with Union Home, Capretta and Roderick worked closely together at NOIC dba Concord Mortgage Group ("NOIC"), with Capretta located at NOIC's Westerville, OH location.

20. As a Union Home Area Sales Manager, Capretta acquired confidential, proprietary, and trade secret information regarding, among other things, Union Home's customers, prospective customers, and referral sources.

21. As an Area Sales Manager, Capretta was given access to and was in a position of trust with regard to the goodwill between Union Home and its customers, prospective customers, and referral sources.

22. Union Home invests significant time, effort, and resources into recruiting, training, and retaining its Area Sales Managers.

23. In the Capretta Employee Agreement, Capretta agreed as follows:

> During Employee's employment with the Company and for two years thereafter, Employee shall not, directly or indirectly, on behalf of themselves or a Competitive Entity, employ or seek to employ any person who is employed by the Company or otherwise induce such person to leave his/her employment with the Company. (Ex. A, ¶5).

24. Capretta agreed not to directly or indirectly use, disclose, divulge, reveal, report, publish, or transfer any of Union Home's Confidential Information. (*Id.* at ¶6).

25. Confidential Information is defined, in part, as "confidential or proprietary information or trade secrets of [Union Home], including but not limited to, written or electronic information: (i) disclosed to [Capretta] or known by [Capretta] as a result of [his] . . . employment, (ii) which is not generally known, and (iii) which relates to or concerns [Union Home]'s business, . . . customers, [and] customer files," among other things. (*Id.*).

26. Capretta also agreed that any violation of these covenants would cause Union Home irreparable harm and, as a result, specifically "consent[ed] to the issuance of a restraining order and/or an injunction by a court of competent jurisdiction." (*Id.* at ¶ 12).

27. Capretta also agreed to "devote [his] best efforts to such full-time employment as long as it shall continue." (*Id.* at ¶1).

28. Further, Capretta agreed that he "shall be liable for any attorney fees expended by [Union Home] to enforce [the Capretta Employee Agreement]." (*Id.* at ¶ 12).

29. Capretta was a trusted employee of Union Home, who was given access to the goodwill Union Home has with its customers, prospective customers, and referral sources, as well as Union Home's confidential and trade secret information, including confidential information about Union Home's customers, prospective customers, and referral sources.

30. The Capretta Employee Agreement is a binding and enforceable contract between Union Home and Capretta.

31. Union Home performed its material obligations under the Capretta Employee Agreement.

32. Capretta owed and continues to owe legal and contractual obligations to Union Home pursuant to the Capretta Employee Agreement.

33. Capretta has breached those obligations.

### Capretta Resigns from Union Home and Solicits Roderick

34. On or about October 7, 2022, Capretta resigned from his position as Area Sales Manager with Union Home.

35. On information and belief, Capretta successfully solicited Roderick to leave Union Home and to join Capretta at Go in violation of his contractual obligations to Union Home.

36. On information and belief, Go was aware of Capretta's solicitation of Roderick in violation of the Capretta Employee Agreement.

### Roderick's Employment with and Contractual Obligations to Union Home

37. On September 6, 2022, Roderick and Union Home entered into the Roderick Employee Agreement, pursuant to which Roderick continued to serve as Loan Officer for Union Home at its Chillicothe, OH, location. (Ex. B).

38. Prior to joining Union Home, Roderick worked closely with Capretta at NOIC from its Chillicothe, Ohio, location.

39. As a Loan Officer, Roderick acquired confidential, proprietary, and trade secret information regarding, among other things, Union Home's customers, prospective customers, and referral sources.

40. In addition, Roderick participated in Union Home's Partners Coaching Partners ("PCP") program, during which program Roderick was provided with proprietary, confidential, and trade secret information belonging to Union Home.

41. As Loan Officer, Roderick was given access to and was in a position of trust with regard to the goodwill between Union Home and its customers, prospective customers, and referral sources.

42. Union Home invests significant time, effort, and resources into recruiting, training, and retaining its Loan Officers.

43. In the Roderick Employee Agreement, Roderick agreed as follows:

Employee agrees that he/she will not become employed in the same or similar capacity as he/she was employed with the Company by a Competitive Entity in the Restricted Area during the Restricted Period. For purposes of this Agreement, the "Restricted Period" shall be the period between the date this Agreement is executed and ***EXPIRATION DATE March 6, 2024***; the "Restricted Area" shall mean a one hundred (100) mile radius from either the Company's headquarters or any branch office of the Company to which Employee was assigned during the Restricted

>Period; and a "Competitive Entity" shall be any entity that competes with the Company in the home mortgage banking or brokering business; and "Competitive Activity" shall be acting in the same or similar capacity in which Employee worked for the Company and shall include, but not be limited to performing the functions of a loan officer, such as by, directly or indirectly, originating or brokering mortgages for real estate located in the Restricted Area.

(Ex. B, ¶6).

44. Roderick agreed not to directly or indirectly use, disclose, divulge, reveal, report, publish, or transfer any of Union Home's Confidential Information. (*Id.* at ¶9).

45. Confidential Information is defined, in part, as "confidential or proprietary information or trade secrets of [Union Home], including but not limited to, written or electronic information: (i) disclosed to [Roderick] or known by [Roderick] as a result of [his] . . . employment, (ii) which is not generally known, and (iii) which relates to or concerns [Union Home]'s business, . . . customers, [and] customer files," among other things. (*Id.*).

46. Roderick also agreed that any violation of these covenants would cause Union Home irreparable harm and, as a result, specifically "consent[ed] to the issuance of a restraining order and/or a preliminary or permanent injunction by a court of competent jurisdiction." (*Id.* at ¶ 15).

47. Roderick also agreed to "devote [his] best efforts to such full time work and employment as long as it shall continue…" (*Id.* at ¶1).

48. Further, Roderick agreed that he "shall be liable for any attorney fees expended by [Union Home] to enforce Paragraphs 3 or 4 [of the Roderick Employee Agreement]." (*Id.* at ¶ 15).

49. Union Home performed its material obligations under the Roderick Employee Agreement.

50. Roderick owed and continues to owe legal and contractual obligations to Union Home pursuant to the Roderick Employee Agreement.

51. Roderick has breached those obligations.

### Roderick Resigns and Immediately Competes with Union Home

52. On or about September 21, 2023, Roderick resigned from his position as Loan Officer with Union Home.

53. Immediately prior to his resignation from Union Home on September 5 and 6, 2023, Roderick sent himself, through his personal email account, Union Home confidential information, including but not limited to confidential information about Union Home's business practices, customers, prospective customers, and referral sources.

54. There was no legitimate Union Home business purpose for Roderick to send himself this information immediately prior to his resignation from Union Home.

55. Roderick now works for Go as a Loan officer in direct violation of his limited non-compete obligations to Union Home.

56. Go is a direct competitor of Union Home that competes with Union Home in and around Columbus, Ohio, among other places.

57. Roderick's employment with Go is in the same or similar capacity as his prior work for Union Home.

58. Roderick is now competing with Union Home in the same market in which he worked for Union Home and clearly within one hundred miles of the Union Home office in Chillicothe, Ohio at which he worked.

59. Furthermore, Roderick sent himself the Union Home confidential information while he was discussing his future employment with Go.

60. As a result, Roderick sent himself the Union Home confidential information for the purpose of providing it to Go and/or using it while employed by Go to compete with Union Home.

23375196 v1

61. Moreover, Roderick's current employment with Go is in direct violation of his obligations in the Roderick Employee Agreement.

62. On information and belief, Go hired Roderick with knowledge of the obligations set forth in both the Capretta and Roderick Employee Agreements.

63. Roderick and Go's breach of the covenant not to compete in the Roderick Employee Agreement has caused and will, unless restrained, continue to cause immediate and irreparable injury, loss, and damage to Union Home in an amount that cannot be precisely calculated, as agreed to by Roderick in the Roderick Employee Agreement.

## COUNT I: BREACH OF COVENANT NOT TO COMPETE
### (Roderick)

64. Paragraphs 1-63 are incorporated herein by reference.

65. The Roderick Employee Agreement is a binding and enforceable contract, under which Union Home has fully performed.

66. Under the Roderick Employee Agreement, Roderick is restricted from competing with Union Home within 100 miles of his Union Home branch location in Columbus, Ohio.

67. Roderick's employment with Go, in competition with Union Home, in the same or similar capacity and in the same market (Columbus, Ohio) is a breach of the covenant not to compete in the Roderick Employee Agreement with Union Home.

68. Roderick's employment with Go, in competition with Union Home, in the same or similar capacity and in the same market (Columbus, Ohio) is a breach of the covenant not to compete in the Roderick Employee Agreement with Union Home.

69. Roderick and Go's breach of the covenant not to compete in the Roderick Employee Agreement has caused and will, unless restrained, continue to cause immediate and irreparable

23375196 v1

injury, loss, and damage to Union Home in an amount that cannot be precisely calculated, as agreed to by Roderick in the Roderick Employee Agreement.

## **COUNT II: BREACH OF NON-SOLICITATION COVENANT (Capretta)**

70. Paragraphs 1-69 are incorporated herein by reference.

71. Capretta's actions in regard Roderick breached his contractual obligation to refrain from directly or indirectly inducing Union Home's employees to leave their employment.

72. Capretta's actions in regard to Roderick breached his contractual obligation, as stated in the Capretta Employee Agreement, to refrain from seeking to employ Union Home's employees.

73. The breaches by Capretta of his obligation to refrain from soliciting Union Home's employees pursuant to the Capretta Employee Agreement have caused and will continue to cause injury, loss, and damage to Union Home.

## **COUNT III: BREACH OF COMMON LAW DUTY OF LOYALTY (Capretta and Roderick)**

74. Paragraphs 1-73 are incorporated herein by reference.

75. While employed by Union Home, Capretta Roderick owed a common law duty of loyalty to Union Home.

76. Capretta's employment with Union Home ended upon his resignation on or about October 7, 2022.  Roderick's employment with Union Home ended upon his resignation on or about September 21, 2023.

77. After his resignation but within the restrictive period set forth in the Capretta Employee Agreement, Capretta attempted to, and upon information and belief did successfully, facilitate the transfer of Union Home's employees to competitor Go, in violation of his common law duty of loyalty.

78. Before his resignation from Union Home, Roderick sent himself Union Home's confidential information and trade secrets to be used in his future employment with Union Home's competitor.

79. Capretta's and Roderick' actions breached their common law duty of loyalty to Union Home.

80. Capretta's and Roderick's breaches of their common law duty of loyalty have caused injury, loss, and damage to Union Home.

## COUNT IV: BREACH OF CONFIDENTIALITY COVENANTS (Roderick)

81. Paragraphs 1-80 are incorporated herein by reference.

82. Roderick sent himself Union Home confidential information immediately before resigning from his employment with Union Home and while he was negotiating his future employment with Capretta and Go for the purpose of disclosing it to Go and/or using it to compete with Union Home.

83. Roderick's actions breached his contractual confidentiality obligations to Union Home, as reflected in the Roderick Employee Agreement, in multiple ways.

84. The breaches by Roderick of his confidentiality obligations pursuant to the Roderick Employment Agreement have caused and will continue to cause injury, loss and damage to Union Home and continuation of these breaches will result, unless restrained, in immediate and irreparable injury, loss, and damage to Union Home.

## COUNT V: TORTIOUS INTERFERENCE (Go)

85. Paragraphs 1-84 are incorporated herein by reference.

86. The Capretta and Roderick Employee Agreements are valid and binding contracts between Capretta and Union Home and Roderick and Union Home.

11

23375196 v1

87. Go had knowledge of the existence and contents of the Capretta and Roderick Employee Agreements.

88. Go hired both Capretta and Roderick despite its knowledge of the existence and contents of the Capretta and Roderick Employee Agreements.

89. No privilege at law or equity permitted Go's conduct, which represented the intentional procurement of a breach of both the Capretta and Roderick Employment Agreements.

### COUNT VI: THREATENED AND ACTUAL MISAPPROPRIATION OF TRADE SECRETS – Federal Defend Trade Secrets Act (Roderick, Capretta, and Go)

90. Paragraphs 1-89 are incorporated herein by reference.

91. During the course of their employment with Union Home, Capretta and Roderick were exposed to substantial amounts of Union Home's trade secrets.

92. For example, Capretta and Roderick had access to Union Home's customer lists, lending materials information, sales, training and support manuals and materials, recruiting and hiring information, and financial statements, fees and pricing policies, financial projections, and other financial information.

93. This information is not available to the general public and is closely guarded by Union Home. Union Home keeps such information strictly confidential in order to maintain a competitive advantage in the highly competitive mortgage lending industry.

94. The information described in Paragraph 92 constitutes protectable trade secrets under the Federal Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1832 *et seq.*, because Union Home derives independent economic value from this information not generally being known to the public, the information is not readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy. 18 U.S.C. § 1839.

95. Capretta, Roderick, and Go misappropriated Union Home's trade secrets when Roderick accessed, downloaded, and retained, among other things, Union Home's customer lists and lending materials information, sales, training and support manuals and materials, recruiting and hiring information, and financial statements, fees and pricing policies, financial projections, and other financial information.

96. Upon information and belief, Capretta, Roderick, and Go are using or plan to use the stolen trade secrets to gain a competitive advantage over Union Home and to improperly solicit Union Home's employees.

97. Pursuant to 18 U.S.C. § 1836(3), this Court may grant injunctive relief to prevent any actual or threatened misappropriation of trade secrets.

98. Capretta, Roderick, and Go's illegal and wrongful retention and use of Union Home's trade secrets without Union Home's permission constitutes actual and threatened misuse of Union Home's trade secrets. Injunctive relief is therefore appropriate.

99. Accordingly, Union Home requests that this Court enter a preliminary and permanent injunction enjoining Capretta, Roderick, Go, and anyone acting in concert with them, from using any Union Home trade secrets, and from disclosing Union Home's trade secrets to anyone not authorized to receive the trade secrets.

100. Union Home also requests an order requiring Capretta, Roderick, and Go to return Union Home's trade secrets, as provided by 18 U.S.C. § 1836(3)(A)(ii).

**PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

101. Paragraphs 1-100 are incorporated herein by reference.

102. As a direct and proximate result of Capretta, Roderick, and Go's conduct, Union Home has suffered, and will continue to suffer, irreparable harm in the loss of business

13

opportunities as well as harm to its goodwill and confidential information in an amount that cannot be fully, completely, and adequately remedied at law.

103. In the Capretta and Roderick Employee Agreement, Capretta and Roderick expressly acknowledged and agreed that a remedy at law for any breach or threatened breach of the provisions of the Capretta and Roderick Employee Agreements would be inadequate, thereby warranting issuance of injunctive relief.

104. Capretta, Roderick, and Go have and continue to willfully violate the Capretta and Roderick Employee Agreements including by accepting employment in the same area and in the same or similar capacity with Go, inducing his Union Home team members to resign from Union Home and go to work for Go, and by taking Union Home's confidential information immediately before resigning his employment with Union Home.

105. Without injunctive relief against Capretta, Roderick and Go, all three will continue to violate the Capretta and Roderick restrictive covenants, thereby causing Union Home immediate and irreparable harm. In contrast, no harm will accrue to Capretta, Roderick, or Go by entry of injunctive relief. None of them ever had the right to violate the above-referenced legal and contractual obligations to Union Home.

106. Injunctive relief is appropriate because protection and maintenance of Union Home's proprietary information and trade secrets, and protection of its goodwill is a vital and legitimate business concern. In the absence of injunctive relief, it is highly unlikely that Union Home will have the ability to precisely calculate the extent of the harm associated with Capretta, Roderick, and Go's violation of Union Home's rights, both under the Capretta and Roderick Employee Agreements and the Federal Defend Trade Secrets Act.

107. The public interest will not be harmed if an injunction is granted.

108. Given Capretta, Roderick, and Go's willful and deliberate violations of their obligations, any bond required to be posted by Union Home should be de minimis.

WHEREFORE, Union Home respectfully requests that the Court grant the following relief:

A. Issue a preliminary and then permanent injunction against Capretta requiring specific performance of the terms and conditions of the Capretta Employee Agreement and prohibiting Capretta from competing with Union Home or soliciting its employees in violation of the Capretta Employee Agreement;

B. Enter judgment in favor of Union Home and against Capretta on all counts in an amount to be determined at trial and to pay damages to Union Home, including, but not limited to, compensatory and punitive damages, costs, interest, and reasonable attorneys' fees;

C. Issue a preliminary and then permanent injunction against Roderick requiring specific performance of the terms and conditions of the Roderick Employee Agreement and prohibiting Roderick from competing with Union Home or soliciting its employees in violation of the Roderick Employee Agreement;

D. Enter judgment in favor of Union Home and against Roderick on all counts in an amount to be determined at trial and to pay damages to Union Home, including, but not limited to, compensatory and punitive damages, costs, interest, and reasonable attorneys' fees;

E. Bind Go to the preliminary and then permanent injunctions described above as an entity in active concert or participation with Capretta and/or Roderick;

F. Grant all other relief the Court deems just and proper in the circumstances.

Respectfully Submitted,

*/s/ Joseph R. Blalock*
Joseph R. Blalock (0090273) (Trial Attorney)
Nicholas P. Lacey (0010042)
Benesch, Friedlander, Coplan & Aronoff
41 South High Street, #2600
Columbus, OH 43215
T: 614-223-9300
F: 614-223-9330
E: jblalock@beneschlaw.com
E: nlacey@beneschlaw.com

*Attorneys for Plaintiff Union Home Mortgage Corp.*

## VERIFICATION

I, Bryan Wright, the Vice President of National Retail Sales, verify under penalties of perjury that the foregoing facts and allegations are true and accurate to the best of my knowledge and belief.

Dated: October 18, 2023

*Bryan Wright*
Bryan Wright

23375196 v1