## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**UNION HOME MORTGAGE CORP.,**

      **Plaintiff**,

**v.**

**NICHOLAS CAPRETTA, *et al*.,**

      **Defendants**.

      **Case No. 2:23-cv-3474**
      **Judge Edmund A. Sargus, Jr.**
      **Magistrate Judge Elizabeth A. Preston Deavers**

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF UNION HOME MORTGAGE CORP.'S MOTION FOR PRELIMINARY INJUNCTION AND SUPPLEMENTAL MEMORANDUM

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. v

I. Introduction ................................................................................................................. 1

II. Relevant Facts ............................................................................................................. 1

    A. Mr. Capretta Left UHM, Joined Go Mortgage, and Has Not Solicited Any UHM Employees Since Then ................................................................................................ 1

    B. Mr. Roderick Joined UHM as an Experienced Loan Officer with Deep Relationships in the Chillicothe Area ............................................................................................................ 2

    C. UHM Required Mr. Roderick to Sign an Employee Agreement Containing Onerous Restrictions on His Future Employment ................................................................................. 2

    D. Mr. Roderick Left UHM and Has Not Had Access to, Used, or Disclosed Any UHM Confidential Information or Trade Secrets Since Then ............................................................ 3

III. Argument .................................................................................................................... 5

    A. UHM Is Not Likely to Succeed on the Merits .................................................................. 5

*None of UHM's claims against Defendants has merit, nor do UHM's claims support a preliminary injunction.*

        1. Non-Compete Claim Against Mr. Roderick (Count I) ................................................. 5

*UHM cannot establish by clear and convincing evidence that the onerous restrictions in its non-compete provision are reasonable, necessary, and enforceable. See Raimonde v. Van Vlerah, 325 N.E.2d 544, 547 (Ohio 1975).*

        The Non-Compete Imposes an Unreasonable Geographic Restriction ............................ 6

*The state-wide geographic scope of UHM's non-compete provision is unreasonable. See, e.g., Rogers v. Runfola & Assocs., Inc., 565 N.E.2d 540, 544 (Ohio 1991); Brentlinger Enters. v. Curran, 752 N.E.2d 994, 999–1000, 1005 (Ohio Ct. App. 2001). The Northern District of Ohio has held that a similar UHM non-compete provision is not enforceable as written because it prohibits essentially any employment with a competitor rather than imposing only customer-based restrictions. Union Home Mortg. Corp. v. Jenkins, No. 1:20-cv-02690, 2021 WL 1979517, at \*7–8 (N.D. Ohio May 18, 2021).*

        The Non-Compete Imposes an Unreasonable Temporal Restriction ................................ 8

*The time frame of UHM's non-compete provision is also unreasonable. See, e.g., Moda Hair Designs, Inc. v. Dechert, 2006-Ohio-682, ¶¶ 1, 27 (5th Dist.); Brentlinger, 752 N.E.2d at 999–1000, 1005. The non-compete prohibits competition anywhere in Ohio for around 18 months, and*

*then also for an additional year after a court issues an order enforcing the provision. The Sixth Circuit described an injunction based on this same language as requiring the parties to guess about a restriction's intended duration, which is prohibited under Federal Rule 65(d)(1). Union Home Mortg. Corp. v. Cromer, 31 F.4th 356, 363–64 (6th Cir. 2022).*

UHM Seeks to Stifle the Inherent Skill and Experience of Mr. Roderick ....................... 10

*Mr. Roderick has been in the home loan industry since the early 2000s. Mr. Roderick developed his skills as a loan officer and his relationships in the market long before he started at UHM. UHM has no legitimate business interest in stifling the skills and contacts Mr. Roderick developed before starting at UHM. See, e.g., Patio Enclosures, Inc. v. Herbst, 39 F. App'x 964, 968 (6th Cir. 2002); Am. Bldg. Servs., Inc. v. Cohen, 603 N.E.2d 432, 435 (Ohio Ct. App. 1992).*

UHM Seeks to Eliminate Ordinary Competition ............................................................. 10

*UHM improperly attempts to prevent ordinary competition. See Castillo-Sang v. Christ Hosp. Cardiovascular Assocs., LLC, 2020-Ohio-6865, ¶ 23 (1st Dist.). UHM does not identify any specific unfair competition that it needs to prohibit but still seeks to bar Mr. Roderick from working as a loan officer or in any position relating to originating or brokering mortgages anywhere in the state. This type of blanket prohibition on competition is unnecessary to protect confidential information or alleged legitimate business interests. Jenkins, 2021 WL 1979517, at \*7–8.*

The Non-Compete Will Bar Mr. Roderick's Sole Means of Support ............................... 12

*Mr. Roderick's work in the home loan industry is his sole means of support, and enforcement of UHM's unreasonable non-compete provision would prevent Mr. Roderick from supporting himself and his family. Ohio law carries a strong presumption that restrictive covenants that eliminate an individual's sole means of support are not enforceable. See Kyrkos v. Superior Beverage Grp., Ltd., 2013-Ohio-4597, ¶ 26 (8th Dist.); Jacono v. Invacare Corp., 2006-Ohio-1596, ¶ 45 (8th Dist.).*

Mr. Roderick Has No Access to UHM Confidential Information or Trade Secrets ......... 12

*Mr. Roderick does not possess any purported UHM confidential information or trade secrets.*

2.    Confidentiality and Trade Secret Claims (Counts IV and VI) .................................... 13

*UHM has not produced or identified any document or piece of information allegedly taken by Mr. Roderick that constitutes a legitimate trade secret or contains UHM confidential information. The five documents that UHM has identified are not confidential or trade secrets. The documents are publicly available, come from third parties, or are marketing materials for public distribution.*

3.    Non-Solicitation Claim Against Mr. Capretta (Count II) ........................................... 16

*Mr. Capretta did not solicit or induce Mr. Roderick or any other UHM employee to leave UHM or join Go Mortgage. UHM acknowledges that it has no evidence of solicitation and that its claim against Mr. Capretta relies on conjecture. Simply communicating about employment, as UHM*

*believes Mr. Capretta might have done, is not solicitation. See Acuity Brands, Inc. v. Bickley, No.*
*13-366, 2017 WL 1426800, at \*23 (E.D. Ky. Mar. 31, 2017).*

4.    Duty of Loyalty Claim (Count III) ............................................................................ 19

*Mr. Roderick and Mr. Capretta did not breach any duty of loyalty to UHM. To breach a duty of*
*loyalty, an individual must compete with the employer while still working there. Veterinary*
*Dermatology, Inc. v. Bruner, 2005-Ohio-5552, ¶ 16 (1st Dist.); Cary Corp. v. Linder, 2002-Ohio-*
*6483, ¶ 32 (8th Dist.). Mr. Roderick and Mr. Capretta did not compete with UHM while they*
*worked for it, nor does UHM even allege that they did.*

B.    UHM Will Not Suffer Any Irreparable Injury .................................................. 20

*Irreparable injury "must be both certain and immediate." Mich. Coal. of Radioactive Material*
*Users, Inc. v. Griepentrog, 945 F.2d 150, 154 (6th Cir. 1991). UHM has not produced evidence*
*establishing that it has suffered, or is likely to suffer, any harm, much less harm that is certain and*
*immediate. None of the documents identified by UHM that Mr. Roderick sent to himself contains*
*UHM confidential information or trade secrets. UHM has presented no evidence to establish that*
*any purported confidential or trade secret information has any current, ongoing value so that the*
*disclosure of that information could create a threat of irreparable injury. And UHM has not shown*
*that Mr. Roderick or Mr. Capretta developed any goodwill while working for UHM that they could*
*now purportedly erode.*

C.    A Preliminary Injunction Will Harm Others and Not Serve the Public Interest .............. 23

*Issuing a preliminary injunction will harm Mr. Roderick's family given that a preliminary*
*injunction would bar Mr. Roderick's work in the home loan industry and prevent him from*
*supporting himself and his family for at least a year. Non-compete clauses are inherently*
*anticompetitive and harmful to the public. See Legacy Roofing 2024 WL 78279, at \*9; FTC, Non-*
*Compete Clause Rule at 5–7, https://www.ftc.gov/system/files/ftc_gov/pdf/noncompete-rule.pdf.*
*The public's interest in promoting competition and discouraging harsh employment restrictions*
*and unfair trade practices outweighs any generic interest in the enforcement of contracts,*
*especially when, as here, the provisions at issue are unreasonable. See Legacy Roofing, 2024 WL*
*78279, at \*14.*

IV.   No Hearing Needed.......................................................................................... 24

*To conserve time and resources, and given UHM's inability to meet its burden of proof, the Court*
*should deny UHM's Motion on the papers without a hearing.*

V.    Conclusion ..................................................................................................... 25

CERTIFICATE OF SERVICE ............................................................................... 26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acuity Brands, Inc. v. Bickley*,
    No. 13-366, 2017 WL 1426800 (E.D. Ky. Mar. 31, 2017)....................................................18

*Am. Bldg. Servs., Inc. v. Cohen*,
    603 N.E.2d 432 (Ohio Ct. App. 1992)...........................................................................7, 9, 10

*Brentlinger Enters. v. Curran*,
    752 N.E.2d 994 (Ohio Ct. App. 2001)............................................................................7, 8, 9

*Cary Corp. v. Linder*,
    2002-Ohio-6483 (8th Dist.)..........................................................................................19, 20

*Castillo-Sang v. Christ Hosp. Cardiovascular Assocs., LLC*,
    2020-Ohio-6865 (1st Dist.)................................................................................................10

*Dayton Superior Corp. v. Yan*,
    No. 3:12-cv-380, 2013 WL 1694838 (S.D. Ohio Apr. 18, 2013)...........................................22

*Dill-Elam, Inc. v. Smallwood Bros. Transp. Servs., LLC*,
    2005-Ohio-6554 (12th Dist.)..............................................................................................20

*Exel Inc. v. Xpedient Mgmt. Grp., LLC*,
    No. 2:17-cv-1076, 2018 WL 456315 (S.D. Ohio Jan. 16, 2018) (Sargus, J.)....................6, 19

*Facility Servs. & Sys. v. Vaiden*,
    2006-Ohio-2895 (8th Dist.) ........................................................................................7, 9, 12

*FirstEnergy Sols. Corp. v. Flerick*,
    521 F. App'x 521 (6th Cir. 2013) .........................................................................................6

*Garlock, Inc. v. United Seal Inc.*,
    404 F.2d 256 (6th Cir. 1968) ...............................................................................................5

*Heskett Ins. Agency, Inc. v. Braunlin*,
    2011-Ohio-6100 (4th Dist.) ................................................................................................9

*Jacono v. Invacare Corp.*,
    2006-Ohio-1596 (8th Dist.) ......................................................................................7, 12, 22

*Kyrkos v. Superior Beverage Grp., Ltd.*,
    2013-Ohio-4597 (8th Dist.) ...............................................................................................12

*Lake Land Emp. Grp. of Akron, LLC v. Columber*,
    804 N.E.2d 27 (Ohio 2004)..................................................................6

*Legacy Roofing Servs. LLC v. Fusco*,
    No. 1:23-cv-01341, 2024 WL 78279 (N.D. Ohio Jan. 8, 2024) .................................... *passim*

*Lifebrite Labs., LLC v. Cooksey*,
    No. 1:15-CV-4309, 2016 WL 7840217 (N.D. Ga. Dec. 9, 2016)...........................................18

*Mech. Constr. Managers, LLC v. Paschka*,
    No. 3:21-cv-302, 2022 WL 1591605 (S.D. Ohio May 19, 2022)...........................................13

*Memphis A. Philip Randolph Inst. v. Hargett*,
    978 F.3d 378 (6th Cir. 2020) ...............................................................5

*Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*,
    945 F.2d 150 (6th Cir. 1991) ...............................................................21

*Moda Hair Designs, Inc. v. Dechert*,
    2006-Ohio-682 (5th Dist.) ...................................................................9

*In re Ohio Execution Protocol Litig.*,
    No. 2:11-cv-1016, 2019 WL 4561454 (S.D. Ohio Sept. 19, 2019).........................................24

*Patio Enclosures, Inc. v. Herbst*,
    39 F. App'x 964 (6th Cir. 2002) .........................................................10, 12, 22, 24

*Raimonde v. Van Vlerah*,
    325 N.E.2d 544 (Ohio 1975)..............................................................6, 12

*Ridge Corp. v. Altum LLC*,
    No. 2:21-cv-5915, 2023 WL 1765918 (S.D. Ohio Feb. 3, 2023)...........................................22

*Robert W. Clark, M.D., Inc. v. Mt. Carmel Health*,
    706 N.E.2d 336 (Ohio Ct. App. 1997) .......................................................5

*Rogers v. Runfola & Assocs., Inc.*,
    565 N.E.2d 540 (Ohio 1991)...........................................................7, 8, 9

*Union Home Mortg. Corp. v. Cromer*,
    31 F.4th 356 (6th Cir. 2022) .................................................................9

*Union Home Mortg. Corp. v. Fratelli*,
    No. 1:23-cv-00857 (N.D. Ohio June 20, 2023), ECF No. 12-1.............................................20

*Union Home Mortg. Corp. v. Jenkins*,
    No. 1:20-cv-02690, 2021 WL 1979517 (N.D. Ohio May 18, 2021)............................7, 10, 11

*United HealthCare Servs., Inc. v. Corzine*,
    No. 2:21-cv-319, 2021 WL 961217 (S.D. Ohio Mar. 15, 2021) ............................................18

*Veterinary Dermatology, Inc. v. Bruner*,
    2005-Ohio-5552 (1st Dist.)........................................................................................................19

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008).........................................................................................................................5

**Statutes**

18 U.S.C. § 1839(3) ...................................................................................................13, 16, 21

18 U.S.C. § 1839(5) .....................................................................................................................16

**Other Authorities**

Fed. R. Civ. P. 65(c) ....................................................................................................................24

Fed. R. Civ. P. 65(d)(1).................................................................................................................9

## I.   <u>Introduction</u>.

Through its unfounded Motion for Preliminary Injunction ("Motion"), Plaintiff Union Home Mortgage Corp. ("UHM") seeks to stifle legitimate competition and selectively punish two of its former employees to dissuade other individuals from leaving UHM.

Defendants Nicholas Capretta and Morgan Roderick left their jobs at UHM and began working at Defendant Go Mortgage, LLC ("Go Mortgage") to pursue career advancement, more autonomy, and an escape from UHM's toxic company culture. UHM now seeks to unfairly bar Mr. Roderick from earning a living as a loan officer for at least a year and restrict Mr. Capretta's recruitment activities based on pure speculation. UHM's Motion relies on unfounded assumptions, third-party materials and publicly available information mislabeled as trade secrets, and an unenforceable non-compete provision. None of UHM's unsupported allegations justifies an injunction, and the Court should deny UHM's meritless Motion. Given the weakness of UHM's case, the Court should decide the Motion on the papers and avoid the time and expense of a hearing.

## II.   <u>Relevant Facts</u>.

### A.   <u>Mr. Capretta Left UHM, Joined Go Mortgage, and Has Not Solicited Any UHM Employees Since Then</u>.

Mr. Capretta has been employed in the financial services industry since 2005 and worked as a loan officer for years before starting at UHM in June 2018. (Decl. of Nicholas Capretta ("Capretta Decl." attached as Ex. A) ¶¶ 2–3); NMLS Consumer Access, Nicholas Capretta Profile, https://tinyurl.com/57xn9ucz (last visited July 17, 2024). UHM required that Mr. Capretta sign an Employee Agreement ("Capretta Agreement") to continue his employment at UHM. (Capretta Decl. ¶ 4.) The Capretta Agreement contains a non-compete provision that expired on October 1, 2022. (Capretta Agr. § 3, ECF No. 1-1 at PageID 19.) The Capretta Agreement also contains a non-solicitation of employees provision, which prohibits Mr. Capretta from soliciting UHM

employees for two years after Mr. Capretta leaves UHM:

> Limited Non-Solicitation of Employees. During Employee's employment with the Company and for two years thereafter, Employee shall not, directly or indirectly, on behalf of themselves or a Competitive Entity, employ or seek to employ any person who is employed by the Company or otherwise induce such person to leave his/her employment with the Company.

(*Id.* § 5, PageID 19.)

Seeking career advancement and more autonomy, Mr. Capretta resigned from UHM on October 7, 2022. (Capretta Decl. ¶ 5.) He later started as the Vice President of Retail Sales at Go Mortgage. (*Id.* ¶ 7.) Since leaving UHM, Mr. Capretta has not solicited or induced any UHM employees to leave UHM or to join Go Mortgage. (*Id.* ¶ 8.)

**B.    Mr. Roderick Joined UHM as an Experienced Loan Officer with Deep Relationships in the Chillicothe Area.**

Mr. Roderick has worked in the home loan industry since the early 2000s. (Decl. of Morgan Roderick ("Roderick Decl." attached as Ex. B) ¶ 2.) He is licensed only in Ohio and has worked his entire career in the Chillicothe area. (*Id.* ¶¶ 5–6.) Through his years of work around Chillicothe, Mr. Roderick has developed a dedicated referral network and client base. (*Id.* ¶ 7.) Mr. Roderick developed those relationships long before he started as a loan officer at UHM. (*Id.*)

Mr. Roderick was a trained and experienced loan officer when he joined UHM in June 2018. (Roderick Decl. ¶ 8.) UHM did not train Mr. Roderick to be a loan officer. (*Id.* ¶ 9.) Nor did UHM build or develop the relationships that Mr. Roderick fostered in the community years before starting at UHM. (*Id.* ¶ 10.) Mr. Roderick brought his existing clients and referral relationships with him to UHM. (*Id.* ¶ 11.)

**C.    UHM Required Mr. Roderick to Sign an Employee Agreement Containing Onerous Restrictions on His Future Employment.**

UHM required that Mr. Roderick sign an Employee Agreement ("Roderick Agreement")

to continue has employment at the company. (Roderick Decl. ¶ 12.) The Roderick Agreement

contains a non-compete provision, which imposes extensive restrictions on Mr. Roderick's ability

to work in the home loan industry after leaving UHM:

> <u>Limited Non-Compete.</u> Employee agrees they will not engage in Competitive
> Activity on behalf of a Competitive Entity in the Restricted Area during the
> Restricted Period. For purposes of this Agreement, the "Restricted Period" shall be
> the period between the date this Agreement is executed and **March 6, 2024**; the
> "Restricted Area" shall mean any state in which Employee is legally able to
> originate or broker mortgages and has done so on behalf of the Company in the
> thirty-six (36) months preceding the termination of Employee's employment with
> the Company; a "Competitive Entity" shall be any entity that competes with the
> Company in the home mortgage banking or brokering business; and "Competitive
> Activity" shall be acting in the same or similar capacity in which Employee worked
> for the Company and shall include, but not be limited to performing the functions
> of a loan officer, such as by, directly or indirectly, originating or brokering
> mortgages for real estate located in the Restricted Area. For the avoidance of doubt,
> the fact that Employee's office after their employment with the Company concludes
> is located outside of the Restricted Area does not resolve whether Employee has
> engaged in Competitive Activity in violation of this covenant. Further, during the
> Restricted Period and for one year thereafter, Employee shall not have any
> ownership interest in a Competitive Entity, whether as a shareholder, member,
> partner or otherwise, within the Restricted Area.

(Roderick Agr. § 6, ECF No. 1-2 at PageID 25.) The Roderick Agreement also contains a penalty

extension provision, which provides that if "Employee violates any covenant in this Agreement,

the term of all covenants contained herein shall automatically be extended for a period of one (1)

year after the later of (a) the date on which Employee ceases such violation; or (b) the date of the

entry of a court order enforcing such covenant." (*Id.* § 11, PageID 25.)

### D. **Mr. Roderick Left UHM and Has Not Had Access to, Used, or Disclosed Any UHM Confidential Information or Trade Secrets Since Then.**

Mr. Roderick grew disillusioned with the toxic culture at UHM and the company's

mistreatment and mismanagement of his loan officer assistant. (Roderick Decl. ¶ 13.) So Mr.

Roderick resigned from UHM on September 21, 2023. (*Id.* ¶ 14.) Mr. Roderick later began

working at Go Mortgage. (*Id.* ¶ 15.) Mr. Capretta did not induce Mr. Roderick to leave UHM or

solicit him to join Go Mortgage. (*Id.* ¶ 17; Capretta Decl. ¶ 10.)

Before leaving UHM, Mr. Roderick emailed himself several documents from his UHM email account. (Roderick Decl. ¶ 18.) None of the documents that Mr. Roderick sent himself contained UHM confidential information or trade secrets. (*Id.*) Many documents originated from third parties. (*Id.*) Other documents contained publicly available information or were marketing materials for public distribution. (*Id.*) Since leaving UHM, Mr. Roderick has not had access to, used, or disclosed any UHM confidential information or trade secrets. (*Id.* ¶ 26.)

Seeking to punish Mr. Roderick and Mr. Capretta and make an example of them for leaving the company, UHM has sued Defendants and moved for a preliminary injunction. (Compl., ECF No. 1 at PageID 1; Mot., ECF No. 2 at PageID 36.) Although UHM claims irreparable injury, UHM did not move for a temporary restraining order, and the Parties have jointly requested several continuances of the preliminary injunction hearing. (*E.g.*, Third Joint Mot. to Extend Briefing Schedule and Continue Prelim. Inj. Hr'g, ECF No. 33 at PageID 234.)

UHM identifies different terms for its requested preliminary injunction in each of its filings. (*Compare* Mot., ECF No. 1 at PageID 40, *with* Mem. in Supp., ECF No. 2-1 at PageID 55–56, *and with* Suppl. Mem., ECF No. 32 at PageID 170.) In its Motion, for example, UHM requests that the Court enter a preliminary injunction prohibiting: (1) Mr. Roderick from "competing in violation of the non-compete covenant in the Roderick Employee Agreement"; (2) Mr. Capretta from "soliciting [UHM's] employees in violation of the non-solicitation covenant in the Capretta Employee Agreement"; and (3) Mr. Roderick and Mr. Capretta from "using or disclosing [UHM's purported] confidential information for their or Go's competitive benefit." (Mot., ECF No. 2 at PageID 40.) UHM seeks more generalized prohibitions in its Supplement to its Motion and Memorandum. (Suppl. Mem., ECF No. 32 at PageID 170.) UHM, however, has not clarified which

version of its requested preliminary injunction it seeks to impose on Defendants. Nor has UHM supported any version of its requested preliminary injunction with clear and convincing evidence.

## III. **Argument**.

UHM seeks a preliminary injunction based on non-existent trade secrets, speculation, and unreasonable and unenforceable restrictive covenants. The Court should deny UHM's meritless Motion.

A preliminary injunction "is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). In determining whether to grant a preliminary injunction, a court must balance four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 385 (6th Cir. 2020) (quoting *Am. Civil Liberties Union Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 642 (6th Cir. 2015)). And importantly, an injunction seeks to prevent future injury, not redress past wrongs. *Robert W. Clark, M.D., Inc. v. Mt. Carmel Health*, 706 N.E.2d 336, 340 (Ohio Ct. App. 1997). The party seeking a preliminary injunction bears the burden of establishing its entitlement to that relief by clear and convincing evidence. *Hargett*, 978 F.3d at 385; *Garlock, Inc. v. United Seal Inc.*, 404 F.2d 256, 257 (6th Cir. 1968). UHM does not come close to meeting this standard.

### A. **UHM Is Not Likely to Succeed on the Merits**.

To start, UHM is not likely to succeed on the merits of its claims.

1. Non-Compete Claim Against Mr. Roderick (Count I).

A non-compete is "an agreement in restraint of trade, [and] is therefore disfavored in the

law, and must be construed strictly." *Exel Inc. v. Xpedient Mgmt. Grp., LLC*, No. 2:17-cv-1076, 2018 WL 456315, at *9 (S.D. Ohio Jan. 16, 2018) (Sargus, J.) (quoting *Single Source Packaging, LLC v. Cain*, 2003-Ohio-4718, ¶ 31 (2nd Dist.)). Because Ohio law disfavors restrictive covenants, "a plaintiff seeking to enforce [one] must meet a high bar." *Legacy Roofing Servs. LLC v. Fusco*, No. 1:23-cv-01341, 2024 WL 78279, at *10 (N.D. Ohio Jan. 8, 2024); *see Lake Land Emp. Grp. of Akron, LLC v. Columber*, 804 N.E.2d 27, 30 (Ohio 2004).

Restrictive covenants may only be enforced when they are reasonable. *Raimonde v. Van Vlerah*, 325 N.E.2d 544, 547 (Ohio 1975); *see FirstEnergy Sols. Corp. v. Flerick*, 521 F. App'x 521, 525 (6th Cir. 2013). And they are reasonable only if the employer can show by clear and convincing evidence that the restrictions imposed (1) are no greater than necessary to protect the employer's legitimate business interests, (2) do not impose undue hardship on the employee, and (3) are not injurious to the public. *Raimonde*, 325 N.E.2d at 547; *see Flerick*, 521 F. App'x at 525. In determining the validity of restrictive covenants, courts consider, among other applicable factors:

> the absence or presence of limitations as to time and space; whether the employee represents the sole contact with the customer; whether the employee is possessed with confidential information or trade secrets; whether the covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition; whether the covenant seeks to stifle the inherent skill and experience of the employee; whether the benefit to the employer is disproportional to the detriment to the employee; whether the covenant operates as a bar to the employee's sole means of support; whether the employee's talent which the employer seeks to suppress was actually developed during the period of employment; and whether the forbidden employment is merely incidental to the main employment.

*Raimonde*, 325 N.E.2d at 547. Under all the relevant factors, the Roderick Agreement's non-compete provision is unreasonable and unenforceable.

<u>*The Non-Compete Imposes an Unreasonable Geographic Restriction.*</u>

The state-wide geographic scope of UHM's non-compete provision is unreasonable. The non-compete restricts Mr. Roderick's ability to work in "any state in which [Mr. Roderick] is legally able to originate or broker mortgages and has done so on behalf of [UHM] in the thirty-six (36) months" before Mr. Roderick left UHM. (Roderick Agr. § 6, ECF No. 1-2 at PageID 25.)

Ohio courts decline to enforce restrictive covenants, like UHM's, that encompass multiple markets and broad geographic areas. *See, e.g.*, *Rogers v. Runfola & Assocs., Inc.*, 565 N.E.2d 540, 544 (Ohio 1991) (refusing to enforce a non-compete covenant against court stenographers for two years across all of Franklin County); *Facility Servs. & Sys. v. Vaiden*, 2006-Ohio-2895, ¶ 53 (8th Dist.) (refusing to enforce a non-compete covenant with no geographic limitation); *Jacono v. Invacare Corp.*, 2006-Ohio-1596, ¶ 40 (8th Dist.) (same); *Brentlinger Enters. v. Curran*, 752 N.E.2d 994, 999–1000, 1005 (Ohio Ct. App. 2001) (affirming the trial court's refusal to enforce a non-compete provision covering two counties and extending to any clients or prospective clients of the employer that reside in or have a principal place of business within 100 miles of the employer's headquarters); *Am. Bldg. Servs., Inc. v. Cohen*, 603 N.E.2d 432, 434–35 (Ohio Ct. App. 1992) (finding a non-compete covenant unreasonable where it prohibited the defendant from working in any business that directly or indirectly competes with the plaintiff in any county in which the plaintiff has any customers or prospective customer).

Likewise, the Northern District of Ohio has held that a UHM non-compete provision, like this one, that prohibits essentially any employment with a competitor—rather than imposing only customer-based restrictions—is not enforceable as written. *Union Home Mortg. Corp. v. Jenkins*, No. 1:20-cv-02690, 2021 WL 1979517, at *7–8 (N.D. Ohio May 18, 2021).

UHM has produced no evidence—let alone clear and convincing evidence—to establish the need for its overly broad, state-wide restriction. UHM does not even seem to know the terms

of the non-compete that it seeks to enforce against Mr. Roderick. In its Complaint and Supplement to its Motion and Memorandum, UHM asserts that Mr. Roderick is restricted from competing within 100 miles of UHM's headquarters or any UHM branch to which Mr. Roderick was assigned. (Compl., ECF No. 1 at PageID 6–7; Suppl. Mem., ECF No. 32 at PageID 159, 161.) But the Roderick Agreement actually restricts Mr. Roderick from competing *anywhere in Ohio* (and in any other state in which Mr. Roderick can originate or broker mortgages and did so in the 36 months before leaving UHM). (Roderick Agr. § 6, ECF No. 1-2 at PageID 25.) Mr. Roderick is licensed only in Ohio and has worked in the Chillicothe area for his entire career. (Roderick Decl. ¶¶ 5–6.) UHM cannot show that it must restrict Mr. Roderick from working in every part of Ohio to protect any legitimate business interest or purported trade secret.

Adding to the confusion, UHM has suggested that "at this time" it might only seek to restrict Mr. Roderick from working in "a one hundred mile radius from the [UHM] office in Columbus, Ohio." (Mem. in Supp., ECF No. 2-1 at PageID 49.) This invented 100-mile restriction does not come from the Roderick Agreement, which restricts competition throughout the entire state. Nor is this invented restriction reasonable. *See Rogers*, 565 N.E.2d at 544; *Brentlinger*, 752 N.E.2d at 999–1000, 1005. Prohibiting Mr. Roderick from working as a loan officer anywhere within 100 miles of Columbus would bar Mr. Roderick's employment in much of the state. And, again, UHM has produced no evidence showing that a 100-mile restriction is necessary to protect any legitimate business interest or purported trade secret.

### <u>The Non-Compete Imposes an Unreasonable Temporal Restriction</u>.

UHM's non-compete provision also has an unreasonable temporal restriction. The non-compete purports to restrict Mr. Roderick's employment from October 2022 through March 6, 2024. (Roderick Agr., ECF 1-2 at PageID 25, 27.) This restriction could last at least a year longer

under a separate provision that would extend the restrictive covenant by one year from the later of when alleged violations cease or the date of an order enforcing the restrictive covenant. (*Id.* § 11, PageID 25.) The Sixth Circuit described an injunction based on this same language as requiring the parties to guess about a restriction's intended duration, which is prohibited under Federal Rule 65(d)(1). *Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 363–64 (6th Cir. 2022). This extension is also a penalty with no justifiable, legitimate business interest. *See Heskett Ins. Agency, Inc. v. Braunlin*, 2011-Ohio-6100, ¶ 22 (4th Dist.) (stating that penalty provisions in contracts are invalid on public policy grounds).

Ohio courts have refused to enforce far less severe restrictions in other cases involving sales jobs and professions, such as Mr. Roderick's, requiring state-specific licenses. *See Moda Hair Designs, Inc. v. Dechert*, 2006-Ohio-682, ¶¶ 1, 27 (5th Dist.) (affirming the trial court's refusal to enforce a one-year non-compete provision); *Brentlinger*, 752 N.E.2d at 999–1000, 1005 (affirming the trial court's refusal to enforce an 18-month non-compete provision); *see also Rogers*, 565 N.E.2d at 544 (finding a two-year non-compete provision covering an entire county to be unreasonable); *Vaiden*, 2006-Ohio-2895, ¶ 53 (finding a two-year non-compete period unreasonable); *Am. Bldg. Servs., Inc. v. Cohen*, 603 N.E.2d 432, 434–35 (Ohio Ct. App. 1992) (finding that a two-year restriction prohibiting the defendant from accepting employment with a competitor that directly or indirectly competes with the plaintiff in any county in which the plaintiff has a customer is unreasonable and unduly restricts the defendant's potential employment opportunities).

UHM has produced no evidence, and certainly no clear and convincing evidence, to establish that the long timeframe and extension provision of its non-compete are necessary to protect a legitimate business interest. UHM simply asserts that its non-compete is "no greater than

required for [its] protection." (Suppl. Mem., ECF No. 32 at PageID 161.) But UHM provides no explanation or evidence to support this naked assertion or to show why UHM needs to impose this onerous restriction on Mr. Roderick.

> ### UHM Seeks to Stifle the Inherent Skill and Experience of Mr. Roderick.

UHM has no legitimate business interest in stifling the skills and contacts Mr. Roderick developed before starting at UHM. *See, e.g.*, *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 968 (6th Cir. 2002); *Am. Bldg. Servs.*, 603 N.E.2d at 435; *Jenkins*, 2021 WL 1979517, at *8; *Legacy Roofing*, 2024 WL 78279, at *12. Mr. Roderick has been in the home loan industry since the early 2000s. (Roderick Decl. ¶ 2); NMLS Consumer Access, Morgan Roderick Profile, https://tinyurl.com/2235e8dj (last visited July 16, 2024). UHM did not train Mr. Roderick to be a loan officer. (Roderick Decl. ¶ 9.) Nor did Mr. Roderick learn his skills or establish his goodwill and relationships with referral sources while working for UHM. (*See id.* ¶ 10.) Mr. Roderick developed those skills and relationships long before he started at UHM. (*See id.* ¶¶ 7–10.) And UHM has submitted no evidence to the contrary.

> ### UHM Seeks to Eliminate Ordinary Competition.

Preventing "ordinary competition is not a legitimate business interest that can be protected by a restrictive covenant." *Castillo-Sang v. Christ Hosp. Cardiovascular Assocs., LLC*, 2020-Ohio-6865, ¶ 23 (1st Dist.). But UHM tries to do exactly that. UHM does not identify any specific unfair competition that it seeks to prohibit through its non-compete. Instead, UHM seeks to bar Mr. Roderick from competing anywhere in Ohio. UHM seeks to impose this state-wide restriction even though Mr. Roderick has worked his entire career in just one part of the state—the Chillicothe area. (Roderick Decl. ¶ 6); *see* NMLS Consumer Access, Morgan Roderick Profile, https://tinyurl.com/2235e8dj (last visited July 16, 2024).

UHM also seeks to improperly eliminate ordinary competition by barring Mr. Roderick from working as a loan officer or in any position relating to originating or brokering mortgages. (Roderick Agr. § 6, ECF No. 1-2 at PageID 25.) The Northern District of Ohio has concluded that this type of blanket prohibition on competition in a similar UHM non-compete provision is not needed to protect confidential information or alleged legitimate business interests. *Jenkins*, 2021 WL 1979517, at *7–8. In that prior UHM lawsuit, protection of UHM's purported confidential information only warranted an injunction prohibiting the defendant from soliciting or providing services to certain UHM customers and prospective customers. *Id.* at *11.

Desperate to justify its unreasonable restrictions, UHM asserts that it can enforce its non-compete to prevent Mr. Roderick from "taking advantage of relationships that were developed or strengthened as a result of his employment" with UHM. (Suppl. Mem., ECF No. 32 at PageID 162 (quoting *Jenkins*, 2021 WL 1979517, at *8).) But UHM identifies no relationships that Mr. Roderick purportedly developed or strengthened while at UHM. *See Jenkins*, 2021 WL 1979517, at *9 (finding a UHM non-compete provision unreasonable in part because "Union Home has failed to present evidence of any goodwill that [the defendant] generated while at Union Home that was independent of the goodwill he had built during his time in Rehoboth Beach prior to his employment with Union Home"). Nor does UHM identify how Mr. Roderick could use any purported confidential information (which Mr. Roderick does not possess) to unfairly compete with UHM. *See id.* at *8 (finding a UHM non-compete provision unreasonable in part because UHM "did not provide any further detail regarding [its purported confidential information] or explain how any of this information could be used by [the defendant] to unfairly compete against Union Home").

UHM, in short, cannot establish with clear and convincing evidence that it seeks to prohibit

11

only unfair competition. UHM improperly seeks to eliminate all competition from Mr. Roderick.

*The Non-Compete Will Bar Mr. Roderick's Sole Means of Support*.

Mr. Roderick has worked most of his adult life in the home loan industry. (*See* Roderick Decl. ¶ 2); NMLS Consumer Access, Morgan Roderick Profile, https://tinyurl.com/2235e8dj (last visited July 16, 2024). And he has worked exclusively in the home loan industry since the early 2000s. (Roderick Decl. ¶ 2.) Mr. Roderick's work in the industry is his sole means of support. (*Id.* ¶ 3.)

Ohio law carries a strong presumption that restrictive covenants that eliminate an individual's sole means of support are not enforceable. *See Raimonde*, 325 N.E.2d at 547; *Kyrkos v. Superior Beverage Grp., Ltd.*, 2013-Ohio-4597, ¶ 26 (8th Dist.) (holding that the trial court abused its discretion when it issued a preliminary injunction restricting the employee's work for 12 months where the employee's income from her new job was her sole means of support); *Jacono*, 2006-Ohio-1596, ¶ 45 (adopting the employee's argument that she should not be precluded from working in her chosen field). Unless Mr. Roderick relocates his family and becomes licensed in a new state, the non-compete and its penalty extension provision would effectively bar Mr. Roderick from the industry for at least a year. (*See* Roderick Agr. § 6, ECF No. 1-2 at PageID 25.) Under Ohio law, that is not a reasonable restriction or outcome. *See Patio Enclosures*, 39 F. App'x at 968; *Legacy Roofing*, 2024 WL 78279, at *12; *see also Vaiden*, 2006-Ohio-2895, ¶ 53 (finding a non-compete covenant unreasonable that imposed "vast and far-reaching" restrictions that barred employment in areas that were "merely incidental to [the employer's] main line of work").

*Mr. Roderick Has No Access to UHM Confidential Information or Trade Secrets*.

Lastly, and as explained more in the section below, Mr. Roderick does not possess any supposed UHM confidential information or trade secrets. So any interest of UHM in protecting its

purported trade secrets has no relevance here and cannot justify a preliminary injunction.

Under all the relevant factors, UHM's non-compete is unreasonable, and this Court should decline to enforce its onerous and unnecessary terms against Mr. Roderick. UHM is unlikely to prevail on its non-compete claim.

2.   <u>Confidentiality and Trade Secret Claims (Counts IV and VI)</u>.

UHM's claims for purported breach of confidentiality covenants (Count IV) and alleged misappropriation of trade secrets (Count VI) also lack merit. UHM alleges that Mr. Roderick breached confidentiality covenants in the Roderick Agreement, and that Defendants misappropriated trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), when Mr. Roderick purportedly sent himself UHM confidential information before resigning from UHM. (Compl., ECF No. 1 at PageID 11–13.)

UHM, however, has not produced or identified any document or piece of information allegedly taken by Mr. Roderick that constitutes a legitimate trade secret or contains UHM confidential information. Nor has UHM even tried to establish that any of the documents that Mr. Roderick allegedly sent himself contain trade secrets or confidential information.

To seek injunctive relief under the DTSA, UHM must establish (1) the existence of a protectable trade secret and (2) misappropriation of the trade secret by Defendants. *Mech. Constr. Managers, LLC v. Paschka*, No. 3:21-cv-302, 2022 WL 1591605, at *9 (S.D. Ohio May 19, 2022). To constitute a "trade secret" under the DTSA, information must "derive[] independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

The Roderick Agreement defines UHM "Confidential Information" as information that (i)

13

is "disclosed to Employee or known by Employee as a result of his or her employment," (ii) "is not generally known," and (iii) "which relates to or concerns [UHM's] business, technology, information systems, computer programs, software, customers, prospective customers, referral sources, pipelines, customer relationship management databases, suppliers, vendors, sales, marketing or finances." (Roderick Agr. § 9, ECF No. 1-2 at PageID 25.)

Despite making vague references to unidentified, alleged confidential materials throughout its Complaint and briefing, UHM identifies only five documents purportedly containing UHM confidential information or trade secrets that Mr. Roderick supposedly misappropriated. (Suppl. Mem., ECF No. 32 at PageID 160.) Those documents are: "Temporary Buydown Calculator"; "Chillicothe Area List"; "Seller Concessions Realtor Cheat Sheet"; "First American Customers"; and "Dave Stevens Presentation." (*Id.*) UHM contends that Mr. Roderick emailed the documents to himself before resigning from UHM. (*Id.*)

Mr. Roderick does not have two of the five documents. (Roderick Decl. ¶¶ 22–23.) And UHM has not even tried to identify the confidential information or trade secrets purportedly contained in the documents. That is likely because none of the documents contains any UHM confidential information or trade secrets. (*Id.* ¶¶ 18–23.)

The "Temporary Buydown Calculator" that Mr. Roderick sent to himself is not a UHM document, nor does it contain any information prepared or owned by UHM. (Roderick Decl. ¶ 19.) It is a loan buydown calculator prepared by a competitor of UHM—REMN Wholesale. (*Id.*); REMN Wholesale, https://www.remnwholesale.com/ (last visited July 16, 2024). The calculator is like countless others that are publicly available online. (Roderick Decl. ¶ 19.) Mr. Roderick had downloaded the calculator because UHM did not provide its loan officers with a loan buydown calculator. (*Id.*)

The "Chillicothe Area List" is a printout from a third-party provider of marketing insights—ListReports—that Mr. Roderick received from a title company agent. (Roderick Decl. ¶ 20.) The spreadsheet is not a UHM document, has no information prepared or owned by UHM, and contains publicly available information sent by someone outside UHM. (*Id.*)

The "Seller Concessions Realtor Cheat Sheet" is a one-page marketing document from UHM for public distribution outside UHM. (Roderick Decl. ¶ 21.) The document has no trade secrets or UHM confidential information, as UHM intended loan officers to send the document to realtors. (*Id.*) Nor does the document have any value to competitors given that it is publicly available UHM marketing material containing likely outdated information intended to promote UHM.

Mr. Roderick does not have a copy of the file labeled "First American Customers." (Roderick Decl. ¶ 22.) And UHM has not produced the file or tried to identify the purported confidential or trade secret information in it.

Mr. Roderick does not have a copy of the file labeled "Dave Stevens Presentation" either. (Roderick Decl. ¶ 23.) Dave Stevens was a consultant who regularly gave presentations about general trends in the home loan industry. (*Id.*) Mr. Roderick attended a presentation by Mr. Stevens. (*Id.*) Nothing in Mr. Stevens's presentation materials contained UHM confidential information or trade secrets. (*Id.*) Rather, the presentation materials contained general information about the market and insights that Mr. Stevens communicated publicly. (*Id.*) Nor would the presentation have any value to competitors given that the general market information in the presentation is now stale and outdated. (*Id.*) The market changes often, and so does the home loan industry. (*Id.* ¶ 24.) And, again, UHM has not produced the document or even sought to identify the purported confidential or trade secret information in the "Dave Stevens Presentation."

UHM, in short, cannot show that any of the documents that Mr. Roderick allegedly sent to himself contain UHM confidential information—much less trade secrets under the DTSA. The information in the documents is generally known and readily ascertainable online or through other public sources. *See* 18 U.S.C. § 1839(3).

UHM's claim under the DTSA also fails because UHM has no evidence of Mr. Roderick—or any other Defendant—using or disclosing any UHM trade secrets. Under the DTSA, "misappropriation" means (A) the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or (B) "disclosure or use of a trade secret of another without express or implied consent" under certain circumstances. 18 U.S.C. § 1839(5). Mr. Roderick did not send himself any UHM trade secret, and he has not used or disclosed any UHM trade secret since resigning from UHM. (Roderick Decl. ¶ 26.)

UHM's confidentiality and trade secret claims lack merit and cannot support a preliminary injunction.

3.     <u>Non-Solicitation Claim Against Mr. Capretta (Count II)</u>.

Mr. Capretta did not solicit Mr. Roderick or any other UHM employee to work for Go Mortgage, (Capretta Decl. ¶¶ 8, 10; Roderick Decl. ¶ 17), and UHM has produced no evidence to support its non-solicitation of employees claim. UHM acknowledges that it asserts this claim based on pure speculation. (*E.g.*, Mem. in Supp., ECF No. 2-1 at PageID 50 ("It is believed that Capretta solicited [UHM's] employees in direct violation of the non-solicitation covenant."); Suppl. Mem., ECF No. 32 at PageID 165 ("Plaintiff avers that the evidence will show . . . .").) With no supporting evidence, UHM has no likelihood of prevailing on its non-solicitation claim.

Because it has no evidence, UHM relies on conjecture. UHM speculates that Capretta "indirectly sought to induce Capretta to leave Union Home to take employment with Go [based]

on their past-working history and the timing of Capretta and Roderick's departure from Union Home." (Suppl. Mem., ECF No. 32 at PageID 165–66.) But how any purported "past-working history" or "timing" establishes solicitation, UHM does not say. (*See id.*)

UHM remains silent likely because work history and timing do not, and cannot, show solicitation here. Mr. Capretta and Mr. Roderick both worked at Concord Mortgage Group ("Concord") just before working for UHM because UHM bought Concord. (Capretta Decl. ¶ 11; Roderick Decl. ¶ 27.) And as for timing, UHM does not argue that Mr. Capretta and Mr. Roderick left UHM at the same time or even around the same time. Mr. Roderick resigned from UHM roughly a year after Mr. Capretta resigned. (*See* Capretta Decl. ¶ 5; Roderick Decl. ¶ 14.) This random timing does not show solicitation or any inference of solicitation under any reasonable analysis.

UHM also speculates that Mr. Capretta "indirectly" solicited Mr. Roderick through communications about the conclusion of Mr. Roderick's employment at UHM and Mr. Roderick's later employment with Go Mortgage. (Suppl. Mem., ECF No. 32 at PageID 166.) UHM argues, without identifying or presenting any supporting evidence, that if Capretta "did anything to facilitate Roderick's employment with Go, that conduct violated the Capretta Employee Agreement." (*Id.*)

But even if Mr. Capretta "did anything to facilitate Roderick's employment" with Go Mortgage (which UHM has not shown), (Suppl. Mem., ECF No. 32 at PageID 166), that conduct would not violate the non-solicitation provision of the Capretta Agreement. Under the non-solicitation provision, Mr. Capretta may not "induce," UHM's word, a UHM employee to leave his employment with UHM. (Capretta Agr. § 5, ECF No. 1-1 at PageID 19.) For Mr. Capretta to have "induce[d]" Mr. Roderick to leave UHM, Mr. Capretta would have needed to convince Mr.

17

Roderick to leave UHM "by persuasion or influence." Merriam-Webster, Induce, https://www.merriam-webster.com/dictionary/induce (last visited July 17, 2024) (defining "induce" as "to move by persuasion or influence"); *see also* Black's Law Dictionary, Inducement (12th ed. 2024) (defining "inducement" as "[t]he act or process of enticing or persuading another person to take a certain course of action"). Showing that Mr. Capretta "did anything to facilitate Mr. Roderick's employment" with Go Mortgage would not establish that Mr. Capretta persuaded or influenced Mr. Roderick to leave UHM and would not prove a violation of the non-solicitation provision.

Courts agree that solicitation requires more than "having a conversation," which is what UHM presumes happened here. *E.g.*, *Lifebrite Labs., LLC v. Cooksey*, No. 1:15-CV-4309, 2016 WL 7840217, at *8 (N.D. Ga. Dec. 9, 2016) ("Surely one does not solicit someone by merely having a conversation. . . . To solicit is to use some sort of salesmanship, to encourage and persuade another to do something."). And as this Court has held in a case involving solicitation of customers, "merely accepting business, without taking any other action to obtain it, does not constitute solicitation." *United HealthCare Servs., Inc. v. Corzine*, No. 2:21-cv-319, 2021 WL 961217, at *17 (S.D. Ohio Mar. 15, 2021) (quoting *Legal Tech. Grp., Inc. v. Mukerji*, No. CV 17-631, 2019 WL 9143477, at *11 (D.D.C. June 10, 2019). That is, simply communicating about employment, as UHM believes Mr. Capretta might have done, is not solicitation. *See Acuity Brands, Inc. v. Bickley*, No. 13-366, 2017 WL 1426800, at *23 (E.D. Ky. Mar. 31, 2017) ("[M]erely responding to an inquiry regarding employment does not constitute solicitation.").

There is no evidence of Mr. Capretta persuading or influencing Mr. Roderick to leave UHM. (*See* Capretta Decl. ¶¶ 9–10; Roderick Decl. ¶¶ 16–17.) Nor is there any evidence of Mr. Capretta encouraging Mr. Roderick, or any other UHM employee, to leave UHM or join Go

Mortgage. (*See* Capretta Decl. ¶ 8; Roderick Decl. ¶¶ 16–17.)

And if the Court holds that the restrictions imposed by the non-solicitation provision are ambiguous or vague, the Court should construe those restrictions against UHM, which drafted them. *See Exel Inc.*, 2018 WL 456315, at *9 (stating that "[w]hen the language in a contract is ambiguous, this Court generally construes it against the drafter").

Mr. Capretta did not induce or solicit Mr. Roderick to leave UHM or join Go Mortgage, and UHM has no evidence to support its conjecture.

### 4. Duty of Loyalty Claim (Count III).

UHM's breach of duty of loyalty claim also falls flat. UHM alleges that Mr. Capretta and Mr. Roderick breached their common law duty of loyalty to UHM. (Compl., ECF No. 1 at PageID 10.) UHM alleges that Mr. Capretta solicited UHM employees after he stopped working for UHM. (*Id.*) And UHM alleges that Mr. Roderick sent himself UHM confidential information and trade secrets before resigning from UHM. (*Id.* at PageID 11.) Neither allegation is true. Nor does either allegation support a breach of duty of loyalty claim even if it were true.

To establish that an employee breached his duty of loyalty to his employer, "the employer must demonstrate that the employee engaged in competition with the employer" during his employment. *Veterinary Dermatology, Inc. v. Bruner*, 2005-Ohio-5552, ¶ 16 (1st Dist.); *see also Cary Corp. v. Linder*, 2002-Ohio-6483, ¶ 32 (8th Dist.) (questioning the actionability of a breach of duty of loyalty claim under Ohio law and concluding that such a claim would require actual competition by the employee while the employee is still employed by the plaintiff company).

Mr. Roderick and Mr. Capretta have breached no duty of loyalty to UHM. They did not compete with UHM while they worked for it, nor does UHM even allege that they did. (*See* Compl., ECF No. 1 at PageID 10–11.) This fact alone defeats UHM's claim.

That Mr. Capretta allegedly solicited UHM employees *after he left UHM* cannot support a breach of duty of loyalty claim. Mr. Capretta owed no duty of loyalty to UHM after he resigned. *See Dill-Elam, Inc. v. Smallwood Bros. Transp. Servs., LLC*, 2005-Ohio-6554, ¶¶ 9–10 (12th Dist.); *Cary Corp.*, 2002-Ohio-6483, ¶ 32.

That Mr. Roderick allegedly sent confidential and trade secret information to himself purportedly to prepare to compete against UHM cannot support a breach of duty of loyalty claim either. *See Cary Corp.*, 2002-Ohio-6483, ¶ 32 (explaining that "[p]reparing to compete" is different from "competing" and that an employee must actually compete with his employer while still employed to breach a duty of loyalty). UHM cannot establish, and has not even alleged, that Mr. Roderick used the materials he sent to himself to compete against UHM while he still worked for UHM. (*See* Compl., ECF No. 1 at PageID 10–11.)

On top of all this, UHM has acknowledged that a purported breach of a duty of loyalty likely does not justify injunctive relief because a duty of loyalty ends at the time of resignation. (Plaintiff's Motion for Preliminary Injunction at 9 n.1, *Union Home Mortg. Corp. v. Fratelli*, No. 1:23-cv-00857 (N.D. Ohio June 20, 2023), ECF No. 12-1.) So not only does UHM's breach of duty of loyalty claim have no merit, it also cannot support UHM's request for a preliminary injunction.[1]

UHM is not likely to prevail on any of its claims against Defendants.

**B.** **UHM Will Not Suffer Any Irreparable Injury.**

UHM cannot establish that it will suffer irreparable injury if the Court does not issue a

---

[1] Because UHM does not cite its tortious interference claim against Go Mortgage in support of its request for a preliminary injunction, Defendants do not address that claim in detail here. (*See generally* Mot., ECF No. 2; Mem. in Supp., ECF No. 2-1; Suppl. Mem., ECF No. 32.) But like UHM's other claims, the tortious interference claim has no merit. Nothing in the Capretta Agreement restricted Mr. Capretta's ability to compete against UHM when he started at Go Mortgage. (Capretta Agr. § 3, ECF No. 1-1 at PageID 19.) The non-compete provision in the Capretta Agreement had expired by then. (*Id.*; Capretta Decl. ¶ 6.) And even if Go Mortgage knew about Mr. Roderick's non-compete provision, that provision is unreasonable and unenforceable. (*See supra* Section III.A.1.)

preliminary injunction. Irreparable injury "must be both certain and immediate, rather than speculative or theoretical." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). And to show that an irreparable injury is likely to occur, a movant "must provide some evidence that the harm has occurred in the past and is likely to occur again." *Id.* UHM cannot make this showing. UHM has not produced evidence establishing that it has suffered, or is likely to suffer, any harm, much less harm that is certain and immediate.

UHM suggests that it might be harmed by competition from Mr. Roderick and Mr. Capretta because they are purportedly "armed with knowledge and familiarity with [UHM's] trade secrets, confidential information, and goodwill." (Mem., ECF No. 2-1 at PageID 52.) But UHM has not produced evidence establishing that Mr. Roderick or Mr. Capretta have any of those things.

None of the documents identified by UHM that Mr. Roderick sent to himself contains UHM confidential information or trade secrets, as explained above. (*See supra* Section III.A.2.) Publicly available information, such as the information in the documents that Mr. Roderick emailed to himself, is neither a trade secret nor confidential. *See* 18 U.S.C. § 1839(3) (defining a trade secret as information that derives independent economic value from "not being generally known"); (Roderick Agr. § 9, ECF No. 1-2 at PageID 25 (defining confidential information as information "which is not generally known")).

And even if any of the documents contained trade secrets or confidential information, UHM has presented no evidence to establish that Mr. Roderick or Mr. Capretta have used, or could use, any of that information to compete against UHM. Mr. Capretta left UHM over a year and a half ago, and Mr. Roderick left UHM around ten months ago. (Capretta Decl. ¶ 5; Roderick Decl. ¶ 24.) UHM does not even try to show that any purported trade secret or confidential information in the documents has current, ongoing value so that the disclosure or threatened disclosure of the

materials could create a threat of irreparable injury. *See, e.g.*, *Patio Enclosures*, 39 F. App'x at 969; *Dayton Superior Corp. v. Yan*, No. 3:12-cv-380, 2013 WL 1694838, at *17, *22 (S.D. Ohio Apr. 18, 2013).

Mr. Roderick's and Mr. Capretta's purported exposure at various unidentified times to unwritten, undefined, and stale business information cannot establish irreparable injury either. (*See* Mem., ECF No. 2-1 at PageID 53.) UHM has not identified these purported trade secrets with any specificity, let alone the required specificity "to separate the secret from the general knowledge." *Ridge Corp. v. Altum LLC*, No. 2:21-cv-5915, 2023 WL 1765918, at *6 (S.D. Ohio Feb. 3, 2023). Nor can UHM establish that any of these purported, unidentified trade secrets that Mr. Roderick and Mr. Capretta might have been exposed to has any current or ongoing value. Conditions in the market and strategies change. (Roderick Decl. ¶¶ 24–25.) Unable to show any current, ongoing value of its unidentified, purported trade secrets, UHM cannot establish irreparable injury. *See Patio Enclosures*, 39 F. App'x at 969; *Dayton Superior Corp.*, 2013 WL 1694838, at *17, *22; *Jacono*, 2006-Ohio-1596, ¶ 41. And to boot, UHM has no evidence of Mr. Roderick or Mr. Capretta using or sharing these unidentified, purported trade secrets.

As to alleged "goodwill," UHM also presents no supporting evidence. UHM has not shown that Mr. Roderick or Mr. Capretta developed any goodwill while working for UHM that they could now purportedly "erode." (Mem., ECF No. 2-1 at PageID 54.) Nor has UHM presented any evidence of it actually suffering a loss of goodwill. UHM has many other loan officers who work in central Ohio who can service UHM customers and maintain UHM's goodwill in the market. *See* UHM, Branches, https://www.uhm.com/branches/ (last visited July 18, 2024).

UHM cannot obtain a preliminary injunction based on presumptions and speculation; UHM must prove that it has suffered an actual injury. *Patio Enclosures*, 39 F. App'x at 970. And here,

UHM cannot show that it has suffered, or is likely to suffer, any harm without a preliminary injunction.

### C.     <u>A Preliminary Injunction Will Harm Others and Not Serve the Public Interest</u>.

The third and fourth preliminary injunction factors also weigh against UHM. Issuance of a preliminary injunction would substantially harm others. For instance, potential harm to the restricted worker's family weighs against granting a preliminary injunction. *Legacy Roofing*, 2024 WL 78279, at *13. And here, issuing a preliminary injunction would severely restrict Mr. Roderick's ability to support himself and his family. (Roderick Decl. ¶ 4.) Mr. Roderick relies on his work as a loan officer to support himself and his family. (*Id.* ¶ 3.) UHM's non-compete provision and proposed preliminary injunction would bar Mr. Roderick from working as a loan officer for at least a year. (Roderick Agr. §§ 6, 11, ECF No. 1-2 at PageID 25.)

Issuing a preliminary injunction would not serve the public interest either. "By their nature, non-solicitation clauses, non-compete clauses, and other restrictive employment covenants are anticompetitive." *Legacy Roofing* 2024 WL 78279, at *9. They limit or prohibit employees from moving freely from one job to another and reduce labor market competition. *Id.* As the Northern District of Ohio has explained, "[t]he negative effects that flow from restrictive employment covenants are stark." *Id.* Enforcing non-compete agreements limits worker mobility and noticeably depresses wages even for those workers who do not sign restrictive covenants. *Id.* "At best, restrictive covenants reduce a worker's leverage to negotiate better working conditions." *Id.* And, as is the case here, restrictive covenants can also "threaten an employee's very livelihood" because they prevent an employee from finding a new job to support himself. *Id.*; *see also* FTC, Non-Compete Clause Rule at 7, https://www.ftc.gov/system/files/ftc_gov/pdf/noncompete-rule.pdf (describing accounts from workers of how non-competes "derailed their careers, destroyed their

finances, and upended their lives").

Through its unreasonable restrictions, UHM tries to bar ordinary competition. UHM tries to ban Mr. Roderick from essentially any employment in Ohio in the home loan industry for at least a year and to impose unfair and unsupported restrictions on Mr. Capretta's ability to compete with UHM on behalf of Go Mortgage. (*See* Mot., ECF No. 2 at PageID 40.) "But in a free market economy, society benefits where productive inputs are used where they make their greatest contribution." *Legacy Roofing*, 2024 WL 78279, at *14. The public benefits from competition in the home loan industry and from allowing a skilled professional like Mr. Roderick to keep helping people finance their homes. *See id.*; *Patio Enclosures*, 39 F. App'x at 970.

The public's interest in promoting competition and discouraging harsh employment restrictions and unfair trade practices outweighs any generic interest in the enforcement of contracts. *See Legacy Roofing*, 2024 WL 78279, at *14; FTC, Non-Compete Clause Rule at 2, 5–7, https://www.ftc.gov/system/files/ftc_gov/pdf/noncompete-rule.pdf. UHM is trying to enforce an unreasonable, and unenforceable, non-compete provision against Mr. Roderick. And UHM admits that it has no evidence to support its non-solicitation claim against Mr. Capretta. The public has no interest in the Court enforcing UHM's unfair and unsupported restrictions.

Issuing a preliminary injunction would impose substantial hardship on Mr. Roderick and his family, harm Mr. Capretta and Go Mortgage, and run contrary to the public interest.[2]

## IV. <u>No Hearing Needed.</u>

A district court may decide a motion for preliminary injunction without holding an evidentiary hearing. *In re Ohio Execution Protocol Litig.*, No. 2:11-cv-1016, 2019 WL 4561454,

---

[2] If the Court were inclined to issue a preliminary injunction, it should only do so after requiring that UHM post a significant bond sufficient to cover a year of Mr. Roderick's lost compensation and Go Mortgage's lost profits associated with Mr. Roderick's lost production. *See* Fed. R. Civ. P. 65(c).

at *3 (S.D. Ohio Sept. 19, 2019). In the interest of conserving time and resources, and given UHM's lack of evidence and inability to even come close to meeting its burden of proof, the Court should deny UHM's Motion on the papers without a hearing.

**V.    Conclusion.**

UHM falls far short of meeting its burden of establishing the need for a preliminary injunction by clear and convincing evidence. Each of the relevant factors weighs against granting UHM's Motion, and none of UHM's underlying claims has merit. UHM attempts to impose an unreasonable non-compete provision against Mr. Roderick. UHM has not identified any legitimate trade secrets or confidential information purportedly taken by Mr. Roderick. And UHM admits that it relies on pure speculation in its request for a preliminary injunction against Mr. Capretta. The Court should deny UHM's unsupported Motion for Preliminary Injunction.

Dated: July 19, 2024                          Respectfully submitted,

                                             /s/ David J. Butler
                                             David J. Butler (0068455), Trial Attorney
                                             David K. Stein (0042290)
                                             Jonathan N. Olivito (0092169)
                                             Amy D. Vogel (0075169)
                                             TAFT STETTINIUS & HOLLISTER LLP
                                             41 S. High Street, Suite 1800
                                             Columbus, Ohio 43215-4213
                                             Phone: (614) 221-2838
                                             Fax: (614) 221-2007
                                             dbutler@taftlaw.com
                                             dstein@taftlaw.com
                                             jolivito@taftlaw.com
                                             avogel@taftlaw.com

                                             *Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

      I certify that on July 19, 2024, I electronically filed the foregoing with the Clerk of Court

by using the Court's CM/ECF system, which will send a notice of this electronic filing to all

parties and counsel of record.

                          /s/ David J. Butler

                          David J. Butler